Argued and submitted January 26, 2016; remanded for resentencing, otherwise affirmed June 7; petition for review denied November 9, 2017 (362 Or 175)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CODY MARSHALL EDWARDS,
*Defendant-Appellant.*

Marion County Circuit Court
13C47515; A157590

399 P3d 463

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

In the course of attempting to evade police, defendant fired two shots at a police officer. The first shot missed, and the second shot wounded the officer's leg. Defendant pleaded guilty to offenses including attempted aggravated murder and first-degree assault. The issue on appeal is whether the trial court erred in imposing consecutive sentences on those counts. To do so, the trial court was required to make one of the alternative findings set out in ORS 137.123(5).[1] For the reasons below, we conclude that the record is insufficient to permit either finding. Accordingly, we remand for resentencing.

We recount the undisputed facts as described by the prosecutor at sentencing. *See State v. Byam*, 284 Or App 402, 406, 393 P3d 252 (2017) (reviewing the imposition of consecutive sentences based on the undisputed facts, "with reasonable inferences necessarily viewed in the light most favorable to the trial court's findings").

After leading police on a high-speed chase, defendant lost control of his vehicle, abandoned it in a field near a stand of trees, and fled on foot. Later, Deputy Buchholz spotted defendant walking just inside the tree line. Buchholz called out to defendant, who then ran away, causing Buchholz to briefly lose sight of him. When Buchholz later saw defendant lying on the ground, defendant announced that he was hurt and needed help. Buchholz replied that he could help, but that defendant first needed to show his hands. Defendant

---

[1] ORS 137.123(5) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

then fired two rounds at Buchholz. The first shot missed, and the second hit Buchholz's leg. The record does not reveal how much time passed between the two shots. Buchholz lost a substantial amount of blood, but survived.

Defendant was indicted on multiple charges, including, as relevant to this appeal, attempted aggravated murder with a firearm, ORS 161.405, ORS 163.095, and ORS 161.610 (Count 1), and first-degree assault with a firearm, ORS 163.185 and ORS 161.610 (Count 2). Defendant pleaded guilty to both counts, admitting in his plea petition that he "intentionally attempted to cause the death of [Buchholz], a police officer, while he was working as a police officer * * * by causing serious physical injury to him with a firearm."

At sentencing, the state recommended consecutive sentences on the two counts under ORS 137.123(5), arguing that defendant had caused two "qualitatively different harms" by firing one shot that was intended to kill but missed and a second shot that hit Buchholz's leg and caused the serious physical injury. In opposing consecutive sentences, defendant argued that the two shots should be considered a single act, citing *State v. Warren*, 168 Or App 1, 6, 5 P3d 1115, *rev den*, 330 Or 412 (2000) (holding that the record did not support the imposition of consecutive sentences pursuant to ORS 137.123(5)(a) for convictions for assault and attempted murder arising out of a single gunshot), and *State v. Rettmann*, 218 Or App 179, 186, 178 P3d 333 (2008) (holding that consecutive sentences were not authorized by ORS 137.123(5)(b) for convictions for assault and attempted murder arising out of a single cut to the victim's wrist).

The trial court ordered that defendant's sentence for assault run consecutively to his sentence for attempted aggravated murder, explaining its reasoning as follows:

> "[W]hile the crimes did occur as part of the same criminal episode, I do find that * * * this case is distinguishable from the case of *Warren* and the case of *Rettmann* * * *. In those cases, it was one act. It was one shot in *Warren*. It was one slice of the wrist in *Rettmann*.
>
> "Here, you had a number of options after you fired the first shot, and you chose to shoot again. I do find that that

is a * * * quantifiably different harm when you shot again and you hit Deputy Buchholz."

We review the trial court's imposition of consecutive sentences for legal error and to determine whether the trial court's predicate factual findings under either ORS 137.123(5)(a) or (5)(b) are supported by any evidence in the record. ORS 138.222(5)(a); *State v. Traylor*, 267 Or App 613, 615-16, 341 P3d 156 (2014).

As noted above, ORS 137.123(5) lays out two sets of alternative findings that may support a trial court's imposition of a consecutive sentence for "separate convictions arising out of a continuous and uninterrupted course of conduct." They are:

"(a)   That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b)   The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

The trial court did not expressly state that it was relying on one or the other of those two paragraphs, and the court was not required to do so in order to impose a consecutive sentence. *Austin v. McGee*, 140 Or App 263, 268, 915 P2d 1027 (1996) (it was not necessary for the court to identify which statutory paragraph it relied upon to impose consecutive sentences under *former* ORS 137.123(4) (1993), *renumbered as* ORS 137.123(5) (1995)). It is reasonably clear, however, that the court here relied on both. First, the court's reference to a "quantifiably different harm" tracks closely the language of paragraph (b). Second, the court's references to defendant's "choice" to "shoot again" suggest that the court also made a finding under paragraph (a). *Cf. State v. Davis*, 113 Or App 118, 120, 830 P2d 620 (1992), *aff'd*, 315 Or 484

(1993) (concluding that court's statement that the defendant "had numerous opportunities to renounce criminal intent, but chose to continue the sexual assaults" was adequate to show that the court determined that the commission of one offense was not incidental to the other).

We first address ORS 137.123(5)(a). Under that provision, the question is whether there is any evidence in the record to support a finding that defendant's commission of first-degree assault was "not merely" "incidental" to his commission of attempted aggravated murder, but, instead, demonstrated a separate and distinct intent to commit the lesser offense. In resolving that question, we look to "the relationship between the uncontroverted facts, with reasonable inferences necessarily viewed in the light most favorable to the trial court's findings, and the predicate criminal statutes." *Byam*, 284 Or App at 406 (citation omitted); *see also State v. Anderson*, 208 Or App 409, 417, 145 P3d 245 (2006), *rev den*, 343 Or 33 (2007) ("[T]he determination of whether a defendant evinced the requisite 'willingness to commit more than one criminal offense' is, as with any other determination of culpable mental states, innately factual.").

We have held that, when a defendant commits two offenses by the same act undertaken to achieve the same purpose, "in the absence of *explicit evidence* of multiple intents," consecutive sentences are not authorized because the two offenses are "so inextricably intertwined" that the consecutively sentenced offense is necessarily incidental to the more serious crime. *Byam*, 284 Or App at 405 (emphasis added). If, on the other hand, a defendant commits the consecutively sentenced offense through conduct that is temporally or qualitatively distinct from the act constituting the more serious offense, such evidence may support an inference that the commission of one offense was not merely incidental to the other. *See, e.g., State v. Martinez*, 270 Or App 423, 428, 430, 348 P3d 285, *rev den*, 357 Or 640 (2015) (consecutive sentences for first-degree robbery and attempted aggravated murder were authorized because the two offenses "began at two distinct moments in time and involved distinct acts," and the defendant "could have chosen not to shoot the victim" after he had already committed first-degree robbery);

*Traylor*, 267 Or App at 616 ("The fact that defendant was more destructive of property than he needed to be in the manner in which he conducted the burglary * * * permits the inference that defendant was willing to commit the separate offense of criminal mischief in addition to the offense of burglary."). Thus, unless the record contains "'discrete facts'" supporting an inference that a defendant acted with a willingness to commit multiple offenses, imposition of consecutive sentences is not authorized by ORS 137.123(5)(a). *State v. Norris*, 281 Or App 512, 514, 383 P3d 944 (2016) (quoting *Warren*, 168 Or App at 6).

We conclude that this record lacks discrete facts to support an inference that defendant's commission of first-degree assault was anything but "merely" "incidental" to his commission of attempted aggravated murder. This case is analogous to *Warren*, in which we held that consecutive sentences were not authorized for assault and attempted murder convictions arising from a single gunshot directed at a single victim. 168 Or App at 5. In that case, the defendant shot the victim once in the head at close range, and the victim survived. *Id.* at 3. The trial court concluded that, by that single act, the defendant had demonstrated a willingness to commit multiple criminal offenses. *Id.* at 4. We reversed, reasoning:

"Apparently, the trial court inferred from the fact that because defendant committed the crime of attempted murder, he also had the willingness to cause serious physical injury to the victim * * *. The problem with the trial court's finding is that it could not reasonably infer from the fact that defendant shot the victim in the head at close range that defendant intended to kill the victim *and* that he acted volitionally to cause the victim serious physical injury. If defendant intended to kill the victim by the single shot to the victim's head, he could not have had the intent *only* to cause him serious physical injury. The statute requires more than an incidental violation of a separate statutory provision in the course of a commission of a more serious crime as a basis for a consecutive sentence. The firing of a single shot into the victim's head by defendant could demonstrate a willingness to commit the crime of murder, but in the absence of findings of other facts that demonstrate a willingness to commit the additional offense of first-degree

assault, it was error to impose consecutive sentences under ORS 137.123(5)(a)."

*Id.* at 5 (second emphasis added).[2]

 *Warren* stands for the general proposition that, when a defendant acts with the intent to kill but instead causes the victim serious physical injury, the intent to cause serious physical injury is subsumed by the intent to kill the victim. *See generally* ORS 161.015(8) (defining "serious physical injury" to include "physical injury which creates a substantial risk of death"). In such circumstances, the commission of assault is incidental to the commission of attempted murder because the defendant's willingness to cause serious physical injury is inextricably intertwined with the defendant's willingness to kill. It follows that, to enable a finding that a defendant in such circumstances had a willingness to commit an assault that *was not* incidental to his commission of attempted murder, there must be some evidence that the defendant had a separate intent to inflict "only" serious physical injury. *Warren*, 168 Or App at 5.

 The reasoning in *Warren* applies in this case. The state argues for a different result here, however, because defendant fired two shots, not one. We agree that, as noted above, a temporal distinction between two acts may support an inference that the defendant evinced a willingness to commit more than one criminal offense. *See, e.g., Martinez,* 270 Or App at 428-30 (reasoning that the defendant had demonstrated an intent to commit multiple criminal offenses in part because the defendant had already committed first-degree robbery when he then decided to shoot the victim, thereby committing attempted murder). Here, however, that inference cannot rationally flow from the evidence, which is silent as to the lapse of time between the two gunshots and contains no other information that would support a finding that one shot was fired with a different intent than the other. The state supposes that "defendant attempted to kill the officer with the first shot but he missed and then

---

 [2] We applied *Warren*'s reasoning in *State v. Garcia-Mendoza,* 225 Or App 497, 498-99, 202 P3d 191 (2009), to conclude that ORS 137.123(5)(a) did not authorize consecutive sentences for assault and attempted-murder convictions based upon a single gunshot to each of two victims.

chose to shoot again and hit the officer, thereby intentionally inflicting serious physical injury." On this record, the state's suggestion that, after trying to kill Buchholz, defendant fired again with the goal of merely injuring him, is speculative.

In short, because the facts do not permit a finding that defendant's conduct in committing first-degree assault was anything but incidental to his conduct in committing attempted murder, the trial court was not authorized to impose consecutive sentences under ORS 137.123(5)(a).

We now turn to ORS 137.123(5)(b). That provision, as noted, authorizes the imposition of consecutive sentences if the court finds that the

> "criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim * * * than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

On appeal, as below, defendant argues that his conduct underlying the offense of first-degree assault—firing his gun at Buchholz—did not cause or risk a loss, injury, or harm that was distinct from the loss, injury, or harm caused or risked by the conduct underlying the offense of attempted aggravated murder.

As a threshold matter, the parties dispute how we should construe the statute. Defendant argues that the phrase "loss, injury, or harm" refers to those harms or risks arising from defendant's actual conduct in committing the two offenses. Viewed that way, defendant reasons, his conduct in attempting to kill Buchholz by shooting at him necessarily encompassed any harm that would flow from injuring Buchholz by gunshot. The state argues that the inquiry should instead focus on the harm that the legislature sought to prevent in enacting each of the statutes defining the substantive offenses. Viewed that way, as we understand the state's argument, the harm contemplated by first-degree assault (serious physical injury) is qualitatively different from that contemplated by attempted aggravated murder (risk of death).

Defendant relies in large part on our decision in *Rettmann*. In that case, the defendant was convicted of, among other offenses, attempted aggravated murder and second-degree assault, based on the single act of cutting the victim's wrist with a knife. 218 Or App at 181. We concluded that ORS 137.123(5)(b) did not authorize consecutive sentences:

> "A single act produces only one set of harms, even if the act constitutes multiple offenses. * * * Where two offenses are predicated on the same act, logic will not support the conclusion that one offense caused or created a risk of causing some harm that the other offense did not. It follows that, if an act that is motivated by an intent to kill creates a risk of causing a particular harm, the same act cannot be said to create a risk of causing a different harm merely because the act can also be viewed as constituting an assault. The harm risked by that act is the same regardless of the intent of the actor. Here, whatever harms resulted from or were risked by defendant's act of cutting [the victim's] wrist were the same regardless of which offense the act is viewed as."

218 Or App at 186. In reaching that conclusion, we described the proper analysis as follows:

> "[A] court must (1) determine which offense is the offense for which a consecutive sentence is contemplated; (2) compare the harms—real or potential—that arose from that offense with those that arose from the offense to which it will be sentenced consecutively; (3) determine whether the offense for which a consecutive sentence is contemplated caused or risked causing any harm that the other did not; and, if so, (4) determine whether the harm that is unique to that offense is greater than or qualitatively different from the harms caused or threatened by the other."

*Id.* at 185-86 (footnote omitted). We made clear that the proper inquiry turns upon the "harms that were risked, though not realized, by the conduct that actually occurred," and not "theoretical harms that an offense—as defined by the statute but not as actually committed—could have caused." *Id.* at 185 n 2.

The state acknowledges that its construction of ORS 137.123(5)(b), which focuses on the abstract harm that the legislature contemplated in enacting the statutory offense,

is difficult if not impossible to reconcile with *Rettmann*. Although the state proposes a different construction of the statute, the state, notably, makes no effort to explain how *Rettmann* was *plainly* wrong. *See State v. Silver*, 283 Or App 847, 852, 391 P3d 962 (2017) ("We only overrule cases that are 'plainly wrong, a rigorous standard grounded in presumptive fidelity to *stare decisis*.'" (Quoting *State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017).)). For that reason, we decline the state's invitation to depart from the principle established in that case.

The state also cites several cases that, it contends, are inconsistent with *Rettmann* and support the state's interpretation of the statute because, in those cases, we concluded that one offense caused or threatened a "greater or qualitatively different" harm by looking only to the statutory definitions of the two offenses. We disagree with the state's characterization of those cases.

For example, in *State v. Herrera-Lopez*, 204 Or App 188, 195, 129 P3d 238, *rev den*, 341 Or 140 (2006), we concluded that the defendant's plea petition and colloquy were sufficient to support the trial court's finding that the defendant's assault offense caused greater injury to the victim than his kidnapping offense. In his plea petition, the defendant admitted that he "took the victim from one place to another against her will to cause her physical injury and did cause her physical injury with a knife, a dangerous weapon." *Id.* at 194 (brackets and internal quotation marks omitted). We reasoned that the court's finding was supported by the record because the "assault offense included the actual infliction of physical injury, whereas the kidnapping offense included only moving the victim from one place to another *for the purpose* of causing physical injury." *Id.* (emphasis in original). In so reasoning, we rested our decision on admissions in the record bearing upon the defendant's actual conduct in committing each of the offenses in question, not on the general harm that the legislature sought to prevent in defining the two offenses. *See also State v. Cone*, 218 Or App 273, 277, 179 P3d 688, *rev den*, 344 Or 539 (2008) (in a decision predating *Oregon v. Ice*, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517 (2009), concluding that the trial court did not plainly err in failing to submit the factual questions

regarding consecutive sentencing to the jury because there was "no doubt that the harm caused by the assault (physical injury to [the victim's] person) was qualitatively different from and greater than the harm caused by the burglary (damage to [the victim's] property)").

Applying the foregoing principles to this case, we conclude that the record does not support the imposition of consecutive sentences under ORS 137.123(5)(b). The factual basis for defendant's conviction for first-degree assault was that he intentionally caused "serious physical injury" to Buchholz by shooting him in the leg with a firearm. *See* ORS 163.185(a). To qualify as a "serious physical injury," the injury to Buchholz must have constituted a "physical injury which creates a substantial risk of death or which creates serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." ORS 161.015(8). From the record, it is clear (and undisputed) that Buchholz's injury qualified as a "serious physical injury" because his gunshot wound created a risk of death. Thus, the record establishes that defendant's conduct in committing first-degree assault caused one harm (serious physical injury) and risked another (death).

The factual basis for defendant's attempted aggravated murder conviction was that, with the intent to kill, defendant took a substantial step toward causing the death of Buchholz by shooting at Buchholz with a firearm. The harms posed by defendant's conduct in committing attempted murder included the risk that the bullet would strike Buchholz and cause death or that the bullet would strike Buchholz and cause physical injury. In short, defendant's conduct underlying both offenses caused or risked precisely the same harms to Buchholz: death and physical injury. It follows that defendant's assault offense cannot be said to have caused or risked harm that was "greater or qualitatively different" than the harm caused or risked by his conduct in committing attempted aggravated murder. Accordingly, imposition of consecutive sentences was not authorized by ORS 137.123(5)(b).

Remanded for resentencing; otherwise affirmed.