TOOKEY, J.
*351 The state appeals in this criminal case, raising challenges to the trial court's imposition of sentence following defendant's guilty plea to one count of attempted murder (Count 1), four counts of first-degree assault (Counts 2, 3, 4, and 5), one count of felony fourth-degree assault constituting domestic violence (Count 6), and one count of unlawful use of a weapon (Count 7). In its first assignment of error, the state contends that the "trial court erred by merging defendant's guilty plea to felony fourth-degree assault constituting domestic violence on Count 6 into defendant's first-degree assault conviction on Count 2." In its second assignment of error, the state argues that the trial court "erred by concluding that it was precluded from imposing the sentence for defendant's first-degree assault conviction consecutive to the sentence for defendant's attempted murder conviction." For the following reasons, we conclude that the trial court erred when it merged the guilt determination on felony fourth-degree assault constituting domestic violence into defendant's first-degree assault conviction. We further conclude that the trial court did not err when it declined to impose the sentence for defendant's first-degree assault conviction consecutive to the sentence for defendant's attempted murder conviction. Accordingly, we remand for the entry of separate convictions for one count of felony fourth-degree assault constituting domestic violence and one count of first-degree assault, and for resentencing, and we otherwise affirm.
I. BACKGROUND
"We describe defendant's criminal conduct to provide context to the facts significant to the issues on appeal; we relate the facts in the light most favorable to the state." State v. Provancha , 293 Or. App. 169, 171, 428 P.3d 916 (2018). In 2013, defendant was convicted of fourth-degree assault constituting domestic violence for assaulting his wife-the victim in this case. After defendant was convicted and placed on probation for that crime, defendant and the victim lived apart and had virtually no contact with each other. In March of 2015, defendant became aware that the victim "would not be taking him back into her life, and that she *352 had begun speaking to another man that she was interested in." After learning that the victim was seeing someone else and that the victim was ending her relationship with defendant, he became "enraged and desperate." *472 In the early morning hours of March 19, defendant drove to the victim's apartment and then laid in wait behind the victim's car with a three-foot-long machete. As defendant expected, the victim left her apartment to go to work at the same time that morning that she did every morning. In what the trial court described as a "sadistic" and "horrific" attack, defendant emerged from behind the car and repeatedly chopped the victims head, face, and arms with the machete. The first blow with the machete caused "a 6-8 inch diagonal cut * * * that spanned from [the victim's] upper right forehead, down between her eyes, over the bridge of her nose, and extending over her left cheekbone." In an attempt to defend herself, the victim raised her arms and hands to block the blows. Defendant then hacked the victim's arms and hands between four and seven times causing "her right arm to be partially severed from her body at the elbow," exposing the bones and tendons in her wrists and hands, and breaking her right arm in several places. The victim then fell to the ground face first and defendant imbedded the machete blade in the back of her head, causing "a three to four inch section of scalp [to be] pulled open and gaping ½ inch to an inch," fracturing her skull, and causing a "minor brain bleed." Defendant then violently shook the machete to dislodge it from the victim's head and left her semi-conscious lying in a pool of her own blood.
Defendant was subsequently arrested, and charged with one count of attempted murder (Count 1), four counts of first-degree assault (Counts 2, 3, 4, and 5), one count of felony fourth-degree assault constituting domestic violence because he had previously been convicted of assaulting the victim (Count 6), and one count of unlawful use of a weapon (Count 7). Defendant pleaded guilty to the crimes as charged.
At defendant's sentencing hearing, the parties disputed whether certain counts should merge and whether the trial court could impose defendant's sentences consecutively.
*353 As relevant here, the trial court concluded that the guilt determinations on Counts 2, 3, 4, and 5, for first-degree assault, merged into a single conviction for first-degree assault on Count 2. The court further concluded that the guilt determination on Count 6, for felony fourth-degree assault, merged with the conviction on Count 2, for first-degree assault, because "the fact that [defendant] had been previously convicted of another [assault against the victim] is just a[n] enhancement factor to get it to a felony" and not an element of the crime of fourth-degree assault.
With respect to consecutive sentences, the court stated that, "based on the record in front of it," the court could not make the findings necessary to order defendant to serve the sentence for the first-degree assault conviction on Count 2 consecutive to the sentence on the attempted murder conviction on Count 1. The court reasoned that it could not impose consecutive sentences under ORS 137.123(5)(a) or (b) because "it was a continuous action," there was no indication that defendant had "a separate intent" to commit more than one criminal offense, and "if you're trying to kill somebody, you are obviously then also * * * causing them serious physical injury."[1] The trial court then sentenced defendant to a total of 128 months' imprisonment.
II. ANALYSIS
A. Merger
We begin by addressing the state's merger argument. On appeal, the state argues that the "trial court erred by merging defendant's guilty plea to felony fourth-degree assault constituting domestic violence into defendant's first-degree assault conviction." Specifically, the state contends that the trial court erred when it concluded that all of the elements of felony fourth-degree assault under ORS 163.160(3) were subsumed into *473 the elements of first-degree *354 assault under ORS 163.185 because defendant's prior conviction was "just a[n] enhancement factor." The state asserts that defendant's prior conviction for assaulting the victim is an element of felony fourth-degree assault and, therefore, all of the elements of felony fourth-degree assault under ORS 163.160(3) are not subsumed into the elements of first-degree assault under ORS 163.185. Defendant responds that "the trial court did not err in merging the guilty verdict for fourth-degree assault with the guilty verdict for first-degree assault, because the factors that elevate fourth-degree assault to a felony are sentence enhancement facts, not elements of a separate crime."
We review a trial court's decision to merge guilt determinations for legal error. State v. Breshears , 281 Or. App. 552, 554, 383 P.3d 345 (2016). Merger is governed by ORS 161.067, which provides, in part:
"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."
A trial court will apply that statute and find separately punishable offenses if three conditions are met: "(1) the defendant engaged in acts that constituted the same conduct or criminal episode; (2) the defendant's acts violated two or more statutory provisions; and (3) each statutory provision requires proof of an element that the others do not." State v. White , 346 Or. 275, 279, 211 P.3d 248 (2009) (internal quotation marks omitted).[2]
*355 In this case, the parties agree that the first two conditions are met-viz. , that defendant's attack on the victim constituted a single criminal episode that violated two statutory provisions, ORS 163.185 and ORS 163.160(3). Hence, the only issue presented for purposes of merger is whether those two statutory provisions each require proof of an element that the other does not. To resolve that inquiry, "we examine only the statutory elements of each offense, not the underlying factual circumstances recited in the indictment." State v. Fujimoto , 266 Or. App. 353, 357, 338 P.3d 180 (2014). "If, however, a statute sets out alternative forms of a single crime, we look to the indictment to determine which form is charged, and we use the elements of the crime as charged in conducting the merger analysis." Breshears , 281 Or. App. at 555, 383 P.3d 345 (internal quotation marks and ellipsis omitted). "Further, once we rely on the indictment to determine which of the alternative forms of the crime are at issue, we disregard particular facts alleged in the indictment or proved at trial." State v. Alvarez , 240 Or. App. 167, 172, 246 P.3d 26 (2010), rev. den. , 350 Or. 408, 256 P.3d 121 (2011).
We therefore begin by examining the statutory provisions of ORS 163.160 to determine the elements of felony fourth-degree assault. The indictment charged defendant with felony fourth-degree assault under ORS 163.160(3)(b).[3] ORS 163.160 provides, in part:
"(1) A person commits the crime of assault in the fourth degree if the person:
*474 "(a) Intentionally, knowingly or recklessly causes physical injury to another[.]
"* * * * *
"(2) Assault in the fourth degree is a Class A misdemeanor.
*356 "(3) Notwithstanding subsection (2) of this section, assault in the fourth degree under subsection (1)(a) * * * of this section is a Class C felony if the person commits the crime of assault in the fourth degree and:
"(a) The assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim;
"(b) The person has been previously convicted of violating this section, * * * and the victim in the previous conviction is the same person who is the victim of the current crime;
"(c) The person has at least three previous convictions for violating this section * * *; or
"(d) The person commits the assault knowing that the victim is pregnant."
As we explain below, for purposes of our merger analysis, the relevant elements of felony fourth-degree assault under ORS 163.160(3)(b) are: (1) knowingly; (2) causes physical injury to another; and (3) defendant having been previously convicted of assaulting the victim.
As noted, the state and defendant dispute whether defendant's previous conviction for assaulting the victim is an element of the crime of felony fourth-degree assault, or a sentence-enhancement factor that does not function as an element for purposes of our merger analysis. See State v. Baker , 265 Or. App. 500, 503-05, 336 P.3d 547 (2014) (subcategory factors that elevate the charged offense on the crime-seriousness scale for purposes of the felony sentencing guidelines at sentencing "do not function as elements for purposes of the merger analysis"); State v. Nunes , 295 Or. App. 91, 102-05, 433 P.3d 374 (2018) (concluding that the defendant's prior conviction and sentence was not an element of the crime of unlawful use of a firearm under ORS 166.220 and ORS 161.610(2), because "the fact of defendant's prior conviction and sentence under ORS 161.610 -which was required to elevate the mandatory-minimum sentence imposed under ORS 161.610(4) -pertain[ed] only to defendant's sentence").
*357 Defendant relies on our opinion in State v. Yong , 206 Or. App. 522, 138 P.3d 37, rev. den. , 342 Or. 117, 149 P.3d 139 (2006), to support his argument that "the legislature intended the facts elevating fourth-degree assault to a felony to be sentence enhancement facts, not elements of a new crime." Defendant's reliance on Yong is misplaced. As explained below, in Yong , we concluded that the various forms of felony fourth-degree assault under ORS 163.160(3) do not constitute separate statutory provisions for purposes of merger. Id . at 546, 138 P.3d 37. We did not address the question at issue in this appeal: whether the various forms of felony fourth-degree assault under ORS 163.160(3) constitute alternative ways of proving the element of aggravation and, as such, are elements of that crime. See State v. Barrett , 331 Or. 27, 32, 10 P.3d 901 (2000) ("First, a defendant must violate two or more statutory provisions; only then does the court consider whether each statutory provision requires proof of an element that the others do not.").
In Yong , the trial court entered two convictions for felony fourth-degree assault based on two different paragraphs of ORS 163.160(3) ; the first conviction was based on the defendant's previous conviction for assaulting the same victim, and the second conviction was based on the defendant "committ[ing] the assault in the immediate presence of the victim's child, who witnessed the assault." Id . at 543, 138 P.3d 37. The defendant argued that the guilty verdicts for violating two paragraphs of ORS 163.160(3) should have merged into a single conviction because "he did not violate separate statutory provisions." Id . In analyzing that issue, we relied on the Supreme Court's decision in Barrett . In Barrett , the court held that the various aggravating circumstances set out as subsections of the aggravated murder statute, *475 ORS 163.095,[4] do not constitute separate statutory provisions that are punishable as separate crimes because "the use of a single section" indicated that "the legislature intended to *358 define a single crime," and "[t]he aggravating factors constitute no more than different theories under which murder becomes subject to the enhanced penalties for aggravated murder." 331 Or. at 35-36, 10 P.3d 901. After noting that "the structure of the subsection defining when fourth-degree assault may be aggravated to a felony is similar to the structure[ ] of the statute[ ] at issue in Barrett ," we concluded that "the text and context of the fourth-degree assault statute indicate that the legislature did not intend to create additional crimes but, instead, intended to more severely punish the same conduct, if committed in a domestic situation, by making it a felony" and, thus, the defendant's conduct did not violate two or more statutory provisions. Yong , 206 Or. App. at 546, 138 P.3d 37. Because Yong addressed only whether the different theories of felony fourth-degree assault under ORS 163.160(3) constitute separate statutory provisions, Yong does not control the outcome of this case, which requires us to determine whether the different theories of felony fourth-degree assault under ORS 163.160(3) constitute an element of that crime.
We turn to whether the enumerated circumstances that elevate fourth-degree assault to a felony under ORS 163.160(3) constitute alternative ways of proving the element of aggravation and, as such, are elements of that crime. As we observed in Yong , "the structure of the subsection defining when fourth-degree assault may be aggravated to a felony is similar to the structure[ ] of" ORS 163.095, which defines aggravated murder. Id. In Barrett , the court observed that ORS 163.095"defines aggravated murder as murder 'committed under, or accompanied by, any ' of various aggravating circumstances." 331 Or. at 35, 10 P.3d 901 (emphasis in original). Like the structure of the aggravated murder statute that defines "different theories under which murder becomes subject to the enhanced penalties for aggravated murder," Barrett , 331 Or. at 36, 10 P.3d 901, fourth-degree assault under ORS 163.160"may be aggravated to a Class C felony 'if the person commits the crime of assault in the fourth degree and' one of the listed circumstances exists." Yong , 206 Or. App. at 546, 138 P.3d 37 (quoting ORS 163.160(3) ). And, although the aggravated murder statute uses the word "any" before enumerating the circumstances under which that crime is *359 committed, "the use of the term 'and' in conjunction with 'or' in the felony fourth-degree assault subsection accomplishes the same purpose." Id . The text of ORS 163.160(3) (felony fourth-degree assault), like the text of ORS 163.095 (aggravated murder), demonstrates that any or all of the enumerated circumstances serve to prove the element of aggravation which subjects the defendant to enhanced penalties for felony fourth-degree assault. Thus, ordinarily, fourth-degree assault is a misdemeanor, but if the state pleads and proves the element of aggravation, then the assault constitutes the distinct criminal offense of felony fourth-degree assault, a Class C felony. See State v. Crider , 291 Or. App. 23, 31, 418 P.3d 18 (2018) (the legislature's decision to classify one offense as a misdemeanor and another as a felony in the same statutory subsection indicates that the latter is "of greater concern" and, thus, a "distinct criminal offense[ ]").
Additionally, in other contexts, we have consistently analyzed the element of aggravation under ORS 163.160(3) as an element of the crime of felony fourth-degree assault. For example, in State v. Reynolds , 183 Or. App. 245, 247, 51 P.3d 684, rev. den. , 335 Or. 90, 58 P.3d 821 (2002), the state appealed "a pretrial order allowing a demurrer to an indictment that charged defendant with felony assault in the fourth degree." The defendant had argued below that the indictment was subject to demurrer under *476 ORS 132.540(2) because the defendant's previous conviction for "assaulting the victim [was] not a 'material element' of the crime" of felony fourth-degree assault. Id . at 247-48, 51 P.3d 684.[5] "The trial court concluded that defendant was correct in asserting that the existence of a prior conviction is not a material element of [felony fourth-degree assault] and dismissed the indictments." Id . at 249, 51 P.3d 684. On appeal, we agreed with the state "that the allegations concerning defendant's prior conviction [were] a material element" of felony fourth-degree assault and *360 rejected the defendant's argument that his previous conviction for assaulting the victim was merely a sentence-enhancement factor. Id . at 247-49, 51 P.3d 684. We concluded that the crimes of felony fourth-degree assault and fourth-degree assault are separate offenses because felony fourth-degree assault requires proof of an additional "material element" that "the state must prove to establish the crime charged," viz ., "that a defendant previously has been convicted of assaulting the same victim." Id . at 249-51, 51 P.3d 684 (emphasis in original). We further concluded that the prior conviction was a "material element" and not merely a sentence-enhancement factor because the indictment would no longer allege the crime of felony fourth-degree assault if that allegation were struck from the indictment. Id . at 250-52, 51 P.3d 684.
Furthermore, in the context of a defendant stipulating to a prior conviction for felony fourth-degree assault, we have analyzed the prior conviction as an element of the crime of felony fourth-degree assault. See State v. Hambrick , 189 Or. App. 310, 312-13, 75 P.3d 462 (2003) (trial court erred in compelling the state to accept the defendant's stipulation to a prior conviction for assaulting the victim, "taking the prior conviction element from the jury," and precluding "the state from introducing evidence to prove that element" of felony fourth-degree assault); State v. Garrett , 187 Or. App. 201, 203-06, 66 P.3d 554 (2003) (where the state did not agree to the defendant stipulating to his prior conviction for assaulting the victim, the trial court did not abuse its discretion in admitting evidence of the defendant's prior conviction because the "defendant's prior conviction was an element of" felony fourth-degree assault and "evidence of the prior conviction was essential in order to prove the crime charged").
Finally, in the context of motions for judgment of acquittal, we have recognized that the crimes of felony fourth-degree assault and fourth-degree assault are separate offenses because felony fourth-degree assault requires the state to prove the additional element of aggravation beyond a reasonable doubt. See State v. Cox , 212 Or. App. 637, 641-43, 159 P.3d 352 (2007) (reversing conviction for felony fourth-degree assault and remanding for entry of a judgment of conviction for misdemeanor fourth-degree assault because the state failed to prove "the 'committed in the immediate *361 presence [of the child]' element"); State v. Bivins , 191 Or. App. 460, 463-71, 83 P.3d 379 (2004) (examining the elements of felony fourth-degree assault, reversing conviction for felony fourth-degree assault, and remanding for entry of a judgment of conviction for misdemeanor fourth-degree assault because the state failed to prove "the element that enhanced the assault to a felony").
Thus, for purposes of merger, we conclude that fourth-degree assault and felony fourth-degree assault are distinct criminal offenses and the enumerated circumstances that elevate fourth-degree assault to a felony under ORS 163.160(3) constitute alternative ways of proving the element of aggravation. Accordingly, in this case, the elements of felony fourth-degree assault are: (1) knowingly; (2) causes physical injury to another; and (3) defendant having been previously convicted of assaulting the victim.
*477 Having determined the elements of felony fourth-degree assault, we now turn to the elements of first-degree assault. The indictment charged defendant for first-degree assault under ORS 163.185(1)(a).[6] Under ORS 163.185 (1)(a), a person commits the crime of first-degree assault if the person "[i]ntentionally causes serious physical injury to another by means of a deadly or dangerous weapon." Thus, for purposes of our merger analysis, the relevant elements of first-degree assault are: (1) intentionally; (2) causes serious physical injury to another; and (3) by means of a dangerous weapon.
With respect to the third question under ORS 161.067(1), whether each statutory provision requires proof of an element that the other does not, we first note that "to act intentionally presupposes acting knowingly, and to inflict serious physical injury presupposes physical injury." State v. O'Hara , 152 Or. App. 765, 768, 955 P.2d 313, rev. den. , 327 Or. 305, 966 P.2d 219 (1998) (emphasis omitted). Thus, in this case, the first two elements of felony fourth-degree assault are subsumed within the first two elements of first-degree assault. However, felony fourth-degree assault also required the *362 jury to find that defendant had been previously convicted of assaulting the victim, an element not necessary to prove the crime of first-degree assault, and first-degree assault required the jury to find that defendant used a dangerous weapon, an element not necessary to prove the crime of felony fourth-degree assault. Thus, each statutory provision requires proof of an element that the other does not.
By elevating fourth-degree assault to a felony, ORS 163.160(3) expresses a legislative policy choice to punish more severely those people who repeatedly assault the same victim. In assaulting the victim in this case, defendant used a dangerous weapon and he chose to assault a victim whom he had previously assaulted. Defendant argues, in effect, that this judgment of conviction should not reflect that the victim was his wife or that she had been previously assaulted by defendant.[7] We disagree; under these circumstances a single conviction for first-degree assault does not accurately reflect the nature and extent of defendant's conduct. See State v. Crotsley , 308 Or. 272, 279-80, 779 P.2d 600 (1989) (because first-degree rape and sodomy require a finding of forcible compulsion, and third-degree rape and sodomy require a finding that the victim was under 16 years of age, the first and third-degree convictions do not merge and defendant's criminal record should reflect that "[h]e forced his victim to engage in sex against her will, and he chose a victim to whom the legislature had accorded additional protection because of her age"). Accordingly, the trial court erred by merging the guilt determination on felony fourth-degree assault constituting domestic violence into defendant's first-degree assault conviction.
B. Consecutive Sentencing
We turn to the state's second assignment of error. The state argues that the trial court "erred by concluding *363 that it was precluded from imposing the sentence for defendant's first-degree assault conviction consecutive to the sentence for defendant's attempted murder conviction."[8] Defendant *478 responds that "[t]he trial court did not err in imposing concurrent sentences for defendant's attempted murder conviction and his first-degree assault conviction."
ORS 137.123(5) provides:
"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:
"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or
"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim * * * than was caused or threatened by the other *364 offense or offenses committed during a continuous and uninterrupted course of conduct."
The trial court concluded that the attack was a "continuous action" and that it "cannot make the findings based on the record in front of it in regards to doing any consecutive sentencing" under ORS 137.123(5)(a) or (b). Specifically, the trial court found:
"I don't think there was a separate intent. * * * I have no facts in front of me to suggest that his entire intent wasn't to just cause her physical injury. * * * I mean, * * * serious physical injury includes murder[.]
"* * * * *
"The definition of serious physical injury includes killing somebody.
"* * * * *
"So, therefore, if you're trying to kill somebody, you are obviously then also * * * causing them serious physical injury with a weapon. That's why to me there's not a distinction between the two in which the court feels confident the court can make the findings necessary to do * * * consecutive sentences."
Additionally, the trial court stated that, in case it erred with respect to its authority to impose consecutive sentences, it wanted to make it "clear [to] * * * the Court of Appeals" that it was "trying to max out whatever time is available to it because of the horrific nature of these particular * * * crimes." We understand the court to have ruled that it was precluded, as a matter of law, from imposing consecutive sentences for defendant's attempted murder conviction and his first-degree assault conviction because the state failed to adduce sufficient evidence for the court to make the predicate factual findings under ORS 137.123(5).
Accordingly, we consider whether a consecutive sentence would have been authorized under ORS 137.123 (5)(a) or (b). See State v. Traylor , 267 Or. App. 613, 615-16, 341 P.3d 156 (2014) ("We review a trial court's decision to impose consecutive sentences for errors of law[.]"). Our analysis is guided by our recent decisions in Provancha , 293 Or. App. 169, 428 P.3d 916, and State v. Edwards , 286 Or. App. 99, 399 P.3d 463, *365 rev. den. , 362 Or. 175, 406 P.3d 609 (2017), which resolved the issue of the proper interpretation and application of ORS 137.123(5)(a) and (b) that the state raises in this appeal. *479 1. ORS 137.123(5)(a)
Under ORS 137.123(5)(a), "the question is whether there is any evidence in the record to support a finding that defendant's commission of first-degree assault was 'not merely' 'incidental' to his commission of attempted * * * murder, but, instead, demonstrated a separate and distinct intent to commit the lesser offense." Edwards , 286 Or. App. at 103, 399 P.3d 463. When a defendant "engages in multiple criminal acts during a single uninterrupted course of conduct[,] * * * 'conduct that is temporally or qualitatively distinct from the act constituting the more serious offense * * * may support an inference that the commission of one offense was not merely incidental to the other.' " Provancha , 293 Or. App. at 174, 428 P.3d 916 (quoting Edwards , 286 Or. App. at 103, 399 P.3d 463 (emphasis in Provancha ) ). "[W]hen a defendant acts with the intent to kill but instead causes the victim serious physical injury," a "court can impose consecutive sentences for assault and attempted murder * * * only if there is some evidence that the defendant had a separate intent to inflict only serious physical injury" because "the intent to cause serious physical injury is subsumed by the intent to kill the victim." Id . at 174-75, 428 P.3d 916 (internal quotation marks omitted). "Thus, unless the record contains discrete facts supporting an inference that a defendant acted with a willingness to commit multiple offenses, imposition of consecutive sentences is not authorized by ORS 137.123(5)(a)." Edwards , 286 Or. App. at 104, 399 P.3d 463 (internal quotation marks omitted).
Nothing in the record of this case supports an inference that defendant's commission of first-degree assault was "not merely * * * incidental" to his commission of attempted murder. ORS 137.123(5)(a). The record is silent as to the lapse of time in between the repeated blows with the machete, and the state failed to adduce any evidence that defendant struck any one blow with an intention different from the intention with which he struck any other blow. In other words, nothing suggests that defendant struck any one blow intending only *366 to injure the victim. The state's argument that defendant had not only an intent to kill but also a separate intent to inflict serious physical injury "because defendant * * * struck the victim not only on her head but on different places on her body" is speculative at best. There is no evidence that, when the victim attempted to defend herself, the multiple blows to the victim's arms and hands-which caused her right arm to be partially severed from her body at the elbow, exposed the bones and tendons in her wrists and hands, and broke her right arm in several places-were struck in any qualitatively different way than the blows to the victims face and head. See Provancha , 293 Or. App. at 171-75, 428 P.3d 916 (where the defendant struck the victim in the head with a bat multiple times and again in the arm when she blocked the bat, deeming "speculative" the state's suggestion that the "defendant struck any blow with an intention different from the intention with which he struck any other blow"); Edwards , 286 Or. App. at 105-06, 399 P.3d 463 (deeming "speculative" the state's suggestion "that defendant attempted to kill the [victim] with the first shot but * * * missed and then * * * fired again with the goal of merely injuring him"). Accordingly, the trial court did not err in declining to impose the sentence for defendant's first-degree assault conviction consecutive to the sentence for defendant's attempted murder conviction under ORS 137.123(5)(a).
2. ORS 137.123(5)(b)
Under ORS 137.123(5)(b), "[t]o determine whether an offense 'caused or created a risk of causing greater or qualitatively different loss, injury or harm' than another offense under the statute," we apply the following analysis:
"[A] court must (1) determine which offense is the offense for which a consecutive sentence is contemplated; (2) compare the harms-real or potential-that arose from that offense with those that arose from the offense to which it will be sentenced consecutively; (3) determine whether the offense for which a consecutive sentence is contemplated caused or risked causing any harm that the other did not; and, if so, (4) determine whether the harm that is unique to that offense is greater than or qualitatively *480 different from the harms caused or threatened by the other."
*367 State v. Rettmann , 218 Or. App. 179, 185-86, 178 P.3d 333 (2008) (quoting ORS 137.123(5)(b) (footnote omitted) ). Potential harms include only "harms that were risked, though not realized, by the conduct that actually occurred," and do not include "theoretical harms that an offense-as defined by statute but not actually committed-could have caused." Id . at 185 n. 2, 178 P.3d 333 ; see also Provancha , 293 Or. App. at 175-76, 428 P.3d 916 (adhering to that aspect of Rettmann ); Edwards , 286 Or. App. at 107-08, 399 P.3d 463 (rejecting the state's contrary interpretation of ORS 137.123(5)(b) ).
Our application of that principle in Provancha and Edwards is instructive. In Provancha , the defendant struck the victim in the head multiple times with a baseball bat. 293 Or. App. at 171, 428 P.3d 916. The defendant was convicted of attempted murder and second-degree assault constituting domestic violence. Id . We concluded that consecutive sentences were not justified under ORS 137.123(5)(b) because the "assault-a blow with a baseball bat-caused the real harm of physical injury and risked the potential harm of death" and "the attempted murder offense * * * caused the harm of physical injury and risked the harm of death." Id . at 176, 428 P.3d 916. Hence, the "defendant's conduct, which constituted multiple offenses, caused or risked the same harms to the victim." Id . Similarly, in Edwards , the defendant shot at an officer twice; the first shot missed, but the second shot hit the officer in the leg, causing the officer to lose a substantial amount of blood. 286 Or. App. at 100-01, 399 P.3d 463. The officer survived and the defendant pleaded guilty to attempted aggravated murder with a firearm and first-degree assault with a firearm. Id . at 101, 399 P.3d 463. We concluded that consecutive sentences were not justified under ORS 137.123(5)(b) because the "defendant's conduct underlying both offenses caused or risked precisely the same harms to [the officer]: death and physical injury." Id . at 109, 399 P.3d 463.
For similar reasons, the record in this case does not support a consecutive sentence under ORS 137.123 (5)(b). The trial court contemplated a consecutive sentence for first-degree assault.[9] The assault with the machete *368 caused the "real" harm of serious physical injury and risked the potential harm of death. Rettmann , 218 Or. App. at 185, 178 P.3d 333. For purposes of this legal analysis, we disagree with the state that there is a distinction between the harms caused and risked by the blows to the victims face and head, and the harms caused and risked by the blows to the victim's arms and hands. As described above, the blows to the victim's face and head fractured the victim's skull, caused a "minor brain bleed," opened "a 6-8 inch diagonal cut * * * that spanned from [the victim's] upper right forehead, down between her eyes, over the bridge of her nose, and extending over her left cheekbone," and caused "a three to four inch section of scalp [to be] pulled open and gaping ½ inch to an inch." Those are serious physical injuries that risked the potential harm of death. Likewise, the blows to the victim's arms and hands that partially severed her right arm at the elbow, exposed the bones and tendons in her wrists and hands, and broke her right arm in several places, are serious physical injuries that risked the potential harm of death. The attempted murder offense, which *481 encompassed all of defendant's assaultive conduct, caused the "real" harm of serious physical injury and risked the harm of death. Rettmann , 218 Or. App. at 185, 178 P.3d 333.[10] Thus, defendant's conduct, which constituted multiple offenses, caused or risked the same harms to the victim. Furthermore, as discussed above, the record does not *369 suggest that defendant struck any one blow with an intention to cause a qualitatively different harm. Accordingly, the record does not support a determination that defendant's assault offense caused or risked a "greater or qualitatively different loss, injury or harm to the victim" than that caused or risked by the attempted murder offense. ORS 137.123 (5)(b). Therefore, the trial court did not err in declining to impose the sentence for defendant's first-degree assault conviction consecutive to the sentence for defendant's attempted murder conviction under ORS 137.123(5)(b).
III. CONCLUSION
In sum, the trial court erred when it merged the guilt determination on felony fourth-degree assault constituting domestic violence into defendant's first-degree assault conviction. The trial court did not err when it declined to impose the sentence for defendant's first-degree assault conviction consecutive to the sentence for defendant's attempted murder conviction.
Remanded for the entry of separate convictions for one count of felony fourth-degree assault constituting domestic violence and one count of first-degree assault, and for resentencing; otherwise affirmed.

As discussed in more detail below, the "court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds" that there "was an indication of defendant's willingness to commit more than one criminal offense" or that "[t]he criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim." ORS 137.123(5).

In discussing former ORS 161.062(1) (1985), repealed by Or. Laws 1999, ch. 136, § 1, "the nearly identical precursor to ORS 161.067(1)," State v. Parkins , 346 Or. 333, 348, 211 P.3d 262 (2009), the Supreme Court stated that the legislature
"clearly intended that criminal records accurately reflect all crimes actually committed and that a person who commits multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime committed rather than only a single conviction which would not accurately portray the nature and extent of that person's conduct."
State v. Crotsley , 308 Or. 272, 276-77, 779 P.2d 600 (1989) ; see also State v. Yong , 206 Or. App. 522, 544 n. 4, 138 P.3d 37, rev. den. , 342 Or. 117, 149 P.3d 139 (2006) (noting that former ORS 161.062(1) and ORS 161.067(1) are "phrased identically, thus expressing the same legislative intent").

Count 6 of the indictment alleged, in part: "The defendant, on or about March 19, 2015, * * * did unlawfully and knowingly cause physical injury to [the victim], defendant having previously been convicted of assaulting the above named victim." ORS 163.160 has been amended since defendant committed his crime; however, because those amendments do not affect our analysis, we refer to the current version of the statute. See Or. Laws 2015, ch. 639, § 2; Or. Laws 2017, ch. 337, § 1.

ORS 163.095 provides, in part, that, "[a]s used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances[.]" ORS 163.095 then lists various aggravating circumstances set out as subsections "under which murder becomes subject to the enhanced penalties for aggravated murder." Barrett , 331 Or. at 36, 10 P.3d 901.

ORS 132.540(2) (2001) provided that "[t]he indictment shall not contain allegations that the defendant has previously been convicted of the violation of any statute which may subject the defendant to enhanced penalties, except where the conviction constitutes a material element of the crime charged."ORS 132.540 was amended in 2009. Or. Laws 2009, ch. 180, § 1. ORS 132.540(3) now provides that "[t]he indictment must allege that the defendant has previously been convicted of an offense when the previous conviction constitutes a material element of the charged offense."

Count 2 of the indictment alleged, in part: "The defendant * * * did unlawfully and intentionally cause serious physical injury to [the victim] by means of a machete, a dangerous weapon, * * * by chopping her face."

The indictment charged defendant with felony fourth-degree assault "constituting domestic violence" pursuant to ORS 132.586 because defendant knowingly caused physical injury to his spouse. See ORS 135.230(3) (defining domestic violence). Under ORS 132.586(2), "[w]hen a crime involves domestic violence, the accusatory instrument may plead, and the prosecution may prove at trial, domestic violence as an element of the crime." We express no opinion on whether the element of "constituting domestic violence" would also preclude merger in this case.

The state also contends that "[t]he trial court erroneously concluded that it was precluded from reviewing the record and making factual findings." We disagree; the trial court expressly relied on the state's sentencing memorandum and reviewed "the record in front of it" to make its decision. The only additional evidence offered by the state that the court decided would not be helpful to its analysis were photographs of the victim's injuries. Given the graphic detail of the attack and the victim's injuries set forth in the written record as described above, we agree with the trial court that the photographs would be of little value in determining whether defendant had a separate intent to inflict only serious physical injury. The state never raised an argument that the trial court was required to admit that evidence or make factual findings, or that the court had merely stated legal conclusions. Thus, the error alleged here is unpreserved. See State v. Bucholz , 317 Or. 309, 320-21, 855 P.2d 1100 (1993) (where consecutive sentences were being imposed and "no objection to lack of findings or request for findings was entered," the error was not preserved and would not be considered on appeal). In fact, the only time the trial court expressly refused to make factual findings was in the context of imposing a consecutive sentence for defendant's unlawful use of a weapon, because defendant pleaded guilty to that count as arising out of a separate act and transaction. That was not error. See State v. Gordian , 209 Or. App. 600, 601, 149 P.3d 190 (2006) (when a defendant pleads guilty to crimes that occurred during separate criminal episodes, under ORS 137.123(2), "a court is not required to make findings to support imposition of consecutive sentences [because] the crimes did not 'arise from the same continuous and uninterrupted course of conduct' ").

As noted, the trial court merged the guilt determinations on Counts 2, 3, 4, and 5, for first-degree assault, into a single conviction for first-degree assault on Count 2. We consider all of the assaultive conduct charged in those counts because, when multiple guilt determinations for the same crime merge into a single conviction, the scope of the conviction includes all of the underlying conduct. See Barrett , 331 Or. at 36-37, 10 P.3d 901 (remanding "to enter one judgment of conviction reflecting the defendant's guilt on the charge of aggravated murder, which judgment separately would enumerate each of the existing aggravating factors" because the "defendant's record should depict the full extent of his involvement in the criminal conduct that led to the victim's death"); Yong , 206 Or. App. at 547, 138 P.3d 37 (remanding with instructions to enter a single judgment of conviction for fourth-degree assault reflecting that the defendant previously had assaulted the victim and that the defendant committed the assault in the immediate presence of the victim's child).
Accordingly, we consider all of the blows with the machete to the victim's face (Count 2), head (Count 5), arms, and hands (Counts 3 and 4) in our analysis under ORS 137.123(5).

Because the indictment alleges only that defendant attempted to kill the victim on the date of the attack, and does not rely on any specific conduct to form a basis for that allegation, we presume that the attempted murder charge encompasses all of defendant's assaultive conduct. On this record, the state's suggestion to the contrary is mere speculation.