Submitted May 27, 2014, affirmed April 15, petition for review denied
August 20, 2015 (357 Or 640)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PEDRO MARTINEZ, JR.,
*Defendant-Appellant.*

### Multnomah County Circuit Court
### 120632718; A153401

348 P3d 285

Peter Gartlan, Chief Defender, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Preusch, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Mooney, Judge pro tempore.

HADLOCK, J.

## HADLOCK, J.

Defendant was convicted of multiple crimes including attempted aggravated murder with a firearm (ORS 163.095(2)(d) (aggravated murder); ORS 161.405(2)(a) (attempt)), first-degree robbery with a firearm (ORS 164.415), and second-degree assault with a firearm (ORS 163.175). The aggravating factor underlying the charge of attempted aggravated murder was an allegation that defendant attempted to kill the victim "in the course of and in the furtherance of" committing the crime of robbery. On appeal, defendant makes unpreserved arguments that the trial court erred by failing to merge the guilty verdicts on the robbery and assault counts into the guilty verdict on the count of attempted aggravated murder. We reject those unpreserved merger arguments, presented in defendant's first and third assignments of error, without discussion. In his second assignment of error, defendant challenges the trial court's imposition of partially consecutive sentences on the convictions for attempted aggravated murder and robbery. We reject that argument for the reasons set forth below and, accordingly, affirm.

"We review a trial court's decision to impose consecutive sentences for errors of law and to determine whether the trial court's predicate factual findings are supported by any evidence in the record." *State v. Traylor*, 267 Or App 613, 615-16, 341 P3d 156 (2014). We describe the facts in keeping with that standard. In a seven-count indictment, the state charged defendant with multiple crimes arising from a single incident. In Count 1, defendant was charged with attempted aggravated murder with a firearm:

"[Defendant], on or about June 11, 2012, * * * did unlawfully and intentionally commit and attempt to commit the crime of Robbery in the First Degree and in the course of and in the furtherance of the crime that defendant was committing and attempting to commit, defendant personally and intentionally attempted to cause the death of [the victim], and during the commission of this felony, the defendant(s) used and threatened the use of a firearm * * *."

In Count 2, defendant was charged with first-degree robbery with a firearm:

"[Defendant], on or about June 11, 2012, * * * did unlawfully and knowingly, while in the course of committing and attempting to commit theft, with the intent of preventing and overcoming resistance to defendant's taking of property and retention of the property immediately after the taking, and being armed with a deadly weapon, use and threaten the immediate use of physical force upon [the same victim] * * *.

"The state further alleges that during the commission of this felony the defendant used and threatened the use of a firearm."

Defendant's case was tried to a jury. The state presented evidence that, one spring evening, the victim had driven to a park near his apartment and was relaxing in his car, listening to music, before the start of his graveyard shift at work. The victim noticed defendant, who was parked nearby, talking on his phone. At some point, defendant drove his car over to the victim's car and parked next to him, then left for about an hour. When the victim next saw defendant, defendant was standing next to the victim's car. Defendant, who was "playing with" a gun, asked the victim for his wallet. The victim refused. Defendant then asked the victim to get out of his car, and the victim refused that request, too, saying "you ain't getting my wallet and you ain't getting my car." Defendant said, "Well, then I'm going to have to shoot you." As the victim tried to drive away, defendant did just that, shooting the victim once in the arm. The victim testified that his car already was moving when defendant fired; the victim believes that it is possible that the car bumped defendant's hand, causing him to lose some control of the gun when he pulled the trigger. The victim drove the short distance to his home and called 9-1-1. He was transported to a hospital. A doctor who treated the victim testified that the bullet broke the victim's arm and fragments traveled into the victim's chest area, coming within an inch of multiple blood vessels. Had the bullet hit one of the major arteries, the victim probably would have died within 10 minutes if he had not received medical care.

The jury convicted defendant of six out of seven crimes charged, including attempted aggravated murder

with a firearm and first-degree robbery with a firearm.[1] At sentencing, the state advocated for imposition of consecutive sentences on those two convictions. The state did not dispute that the two crimes arose during a single continuous and uninterrupted course of conduct. Rather, the state argued in its sentencing memorandum that consecutive sentences were justified both under ORS 137.123(5)(a), because the robbery was "an indication of defendant's willingness to commit more than one criminal offense," and under ORS 137.123(5)(b), because the robbery "caused or created a risk of causing * * * qualitatively different loss, injury or harm to the victim."[2] Defendant disputed both points.

The trial court agreed with the state, concluding that it had discretion to order the sentences on the two convictions to run either consecutively or concurrently. The court sentenced defendant to 10 years of imprisonment and three years of post-prison supervision on the conviction for attempted aggravated murder, under ORS 137.700, with a five-year "gun minimum" pursuant to ORS 161.610. On the first-degree robbery conviction, the court sentenced defendant to 90 months of imprisonment and three years of post-prison supervision, also pursuant to ORS 137.700. The court ordered defendant to serve 45 months of that 90-month term of incarceration concurrently with the sentence on the

---

[1] The jury also convicted defendant of unlawful use of a weapon with a firearm (Count 3), two counts of felon in possession of a firearm (Counts 4 and 5), and second-degree assault with a firearm (Count 7). The jury acquitted defendant of a charge of menacing (Count 6), which related to an encounter that defendant had with the victim's son a few days after the shooting.

[2] ORS 137.123(5) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

aggravated-murder conviction, with the remainder to be served consecutively. In doing so, the court announced that it agreed with the state's sentencing memorandum in its entirety. The court also expressly found, pursuant to ORS 137.123(5), that the robbery caused a qualitatively different harm than the attempted aggravated murder and that the conduct "was not incidental, but rather a strong indication that * * * defendant was prepared to commit a separate offense."

On appeal, defendant renews his argument that the court erred by ordering partially consecutive sentences on the convictions for attempted aggravated murder and robbery. Defendant asserts that the record does not support the trial court's ORS 137.123(5) findings "because the legislature took the felony [robbery] into account when it set the penalty for attempted aggravated murder." According to defendant, because the robbery "was an essential fact or a fundamental component of the attempted aggravated murder conviction," the robbery "was merely incidental to" that more serious crime. Therefore, defendant concludes, consecutive sentences were not authorized under ORS 137.123(5)(a). Defendant also contends that consecutive sentences were not authorized under ORS 137.123(5)(b) because "the attempted aggravated murder statute fully encapsulates the harm caused by defendant's conduct—an attempted murder during the commission of a felony."

The state responds that the trial court's findings are supported by the record and are adequate to justify the imposition of partially consecutive sentences under both subsections of ORS 137.123(5). First, the state argues, "defendant had already committed acts sufficient to sustain a conviction for first-degree robbery by the time that he decided to shoot the victim, attempting to kill him." Thus, the state concludes, the robbery was not merely "incidental" to the attempted aggravated murder, but indicated defendant's willingness to commit another crime, and partially consecutive sentences were justified under ORS 137.123(5)(a). As to harms, the state asserts that "the victim's fear over losing his wallet was clearly a qualitatively different harm than the fear of losing his life," justifying partially consecutive sentences under ORS 137.123(5)(b).

We agree with the state that the trial court was authorized to impose consecutive sentences under ORS 137.123(5)(a). That provision gives a trial court discretion to impose consecutive sentences for multiple convictions arising from "a continuous and uninterrupted course of conduct" if the court finds that "the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense[.]" Here, first-degree robbery is the offense for which a partially consecutive sentence was contemplated. Consequently, the trial court could impose that partially consecutive sentence if the robbery "was not merely" incidental to the attempted aggravated murder, but indicated defendant's willingness to commit more than one crime. As the state observes, defendant committed robbery *before* he tried to kill the victim, and he did so through actions—"playing with" a gun while demanding the victim's wallet—that were distinct from the subsequent act—firing the gun—that constituted the attempt to kill the victim. Because the actions that constituted the two offenses were distinct both temporally and qualitatively, the trial court could properly find that defendant's robbery of the victim was not "merely incidental" to the attempted aggravated murder. *Cf., State v. Garcia-Mendoza*, 225 Or App 497, 498, 202 P3d 191 (2009) (consecutive sentences for first-degree assault and attempted aggravated murder imposed under ORS 137.123(5)(a) were improper when both convictions were premised on a single gun shot to a single victim, in the absence of other facts demonstrating that the defendant had a willingness to commit *both* assault and murder). Accordingly, the court did not err by imposing a partially consecutive sentence for the robbery under ORS 137.123(5)(a).[3]

In arguing to the contrary, defendant emphasizes that he was convicted of attempted *aggravated* murder, not of attempted ordinary, nonaggravated murder. The legislature has determined that certain types of murder are

---

[3] Accordingly, we do not address the state's contention that the court also could impose consecutive sentences under ORS 137.123(5)(b).

"particularly heinous" and has identified those types of murder by describing specified aggravating factors. *See* ORS 163.095 (listing aggravating factors); *State v. Barrett*, 331 Or 27, 35-36, 10 P3d 901 (2000) (explaining statute's effect). The aggravating factor in this case is that defendant tried to kill the victim "in the course of and in the furtherance of" the robbery. *See* ORS 163.095(2)(d) (murder is aggravated murder when "the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b)"); ORS 163.115(1)(b) (the "felony murder" statute, under which criminal homicide constitutes murder when, *inter alia*, it is committed by a person who commits or attempts to commit first-degree robbery "and in the course of and in furtherance of" the robbery, the person (or "another participant") causes another person's death). As we understand defendant's argument, it is that his crime of attempted *aggravated* murder encompasses both the attempt to kill the victim *and* the robbery of the victim. Defendant concludes that, as a matter of law, the robbery must have been "merely incidental to the aggravated felony murder attempt."

We disagree. ORS 137.123(5) allows imposition of "consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct" if, *inter alia*, "the criminal offense for which a consecutive sentence is contemplated" was not merely incidental, "but rather was an indication of defendant's *willingness* to commit more than one *criminal offense.*" ORS 137.123(5)(a) (emphases added). Thus, the statute directs a trial court's attention to the nature of a defendant's offenses in deciding whether to impose consecutive sentences, as well as the defendant's willingness to commit more than a single offense.

Here, the two criminal offenses at issue are first-degree robbery and attempted aggravated murder. It is important to recognize that the second of those offenses is not some amalgam like "robbery plus attempted murder," as defendant posits. Rather, the offense is simply attempted murder of a sort that the legislature deems particularly heinous because of the aggravated circumstances in which it was committed and, therefore, deserving of enhanced

punishment. *Barrett*, 331 Or at 35-36.[4] Defendant did not commit that offense until he attempted to kill the victim by shooting him. Because, at that point, defendant already was committing robbery, the attempted murder fell within the category of attempts that the legislature views as particularly serious, that is, "aggravated." But the two offenses still began at two distinct moments in time and involved distinct acts: defendant began committing robbery when he threatened the victim with a gun while trying to steal his wallet, and defendant did not commit attempted aggravated murder until a later point, when he fired the gun. Thus, even after defendant knowingly engaged in the dangerous acts that constituted robbery, he still could have chosen not to shoot the victim and, therefore, not to commit attempted aggravated murder. But he did not make that choice. Instead, he willingly engaged in additional criminal acts by trying to kill the victim. Given those circumstances, the trial court did not err in finding that the robbery was not merely "incidental" to defendant's later attempt to murder the victim, "but rather was an indication of defendant's willingness to commit more than one criminal offense." ORS 137.123(5)(a).

Affirmed.

---

[4] We acknowledge some tension in the Supreme Court's case law regarding the precise nature of the legislatively identified aggravating circumstances that elevate ordinary murder to aggravated murder. In *Barrett*, the court held that "the various aggravating circumstances are not 'elements' for purposes of *former* ORS 161.062(1) [the 'anti-merger' statute] but, rather, alternative ways of proving the element of aggravation." 331 Or at 37 n 4. The court reached that conclusion in the course of holding that multiple counts of aggravated murder committed against a single victim may merge when the counts are based only on "different theories under which [the] murder becomes subject to the enhanced penalties for aggravated murder." *Id.* at 36. However, in a different context, the court has reached a seemingly different conclusion. In *State v. Pipkin*, 354 Or 513, 519, 316 P3d 255 (2013), the court stated that it understood its pre-*Barrett* decision in *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993), to hold that "each of the * * * aggravating circumstances" that can elevate ordinary murder to aggravated murder "was a separate element." The tension between *Barrett*, on one hand, and *Pipkin* and *Boots*, on the other, does not directly affect our analysis here. Moreover, the "jury concurrence" concern at issue in the latter cases—which relates to the constitutional requirements for a proper *jury verdict*—has no bearing on the consecutive-sentencing issue in this case, and differs fundamentally from the issue that was presented in *Barrett*, which addressed only statutory post-verdict merger and sentencing issues. Thus, to the extent that the resolution of this case could be viewed as depending on whether robbery is properly considered an element of defendant's attempted aggravated murder conviction, the analysis in *Barrett* provides better guidance than do the opinions in *Pipkin* and *Boots*.