Argued and submitted March 10, 2020, affirmed March 3, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DUANE DARNELLE RUSSELL,
*Defendant-Appellant.*

Washington County Circuit Court
17CR62329; A167702

482 P3d 799

Defendant broke into an apartment looking for a particular person, planning to rob him of money and drugs, as payback for a botched drug transaction. He had already committed burglary when he discovered that he was in the wrong apartment. At that point, defendant decided to commit an entirely different robbery, which he then carried out. As a result, he was convicted of first-degree robbery, ORS 164.415, second-degree robbery, ORS 164.405, and first-degree burglary, ORS 164.225. At defendant's sentencing hearing, the trial court merged his first- and second-degree robbery convictions and sentenced him consecutively on the robbery and burglary convictions. On appeal, defendant assigns error to, among other things, the trial court's imposition of consecutive sentences. He argues that his burglary conviction was "merely incidental" to the more serious offense of robbery, which precluded the court from imposing consecutive sentences under ORS 137.123(5)(a). *Held*: The trial court did not err in imposing consecutive sentences. The record demonstrates that, after defendant burglarized the victim's apartment and discovered that he had targeted the wrong person, he formed a distinct "willingness" to commit the separate offense of robbery. Accordingly, the burglary was not "merely incidental to" the robbery, and consecutive sentences were appropriate.

Affirmed.

Janelle F. Wipper, Judge.

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. Also on the opening brief and a supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services. Duane Russell filed a supplemental brief *pro se*.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Affirmed.

## MOONEY, J.

Defendant and his accomplice broke into an apartment and robbed its occupant at gunpoint. Their original plan was to commit both a burglary and a robbery, home-invasion style. They were targeting a particular individual from whom they had planned to steal $50,000 and cocaine in retaliation for a botched drug deal. When they realized that they had broken into the wrong apartment, they had already committed burglary. At that point, they decided to commit a different robbery than the one they had originally planned. As a result, defendant was convicted of both first-degree robbery with a firearm and first-degree burglary with a firearm. The trial court ordered defendant to serve the burglary sentence consecutively to the robbery sentence. On appeal, defendant contends in his first assignment of error that the trial court erred in imposing that sentence.[1] He argues that the record does not support a finding that the burglary and robbery were sufficiently distinct to justify consecutive sentences under ORS 137.123(5)(a). Because the record supports a reasonable inference that defendant formed a willingness to commit each crime, independent of the other crime, we conclude that the court did not err in ordering the sentence on the burglary conviction to run consecutively to the sentence on the robbery conviction. We affirm.

"We review a trial court's decision to impose consecutive sentences for errors of law and to determine whether the trial court's predicate factual findings are supported by any evidence in the record." *State v. Traylor*, 267 Or App 613, 615-16, 341 P3d 156 (2014). We review both the evidence presented and inferences reasonably derived from that evidence. *State v. Anderson*, 208 Or App 409, 417, 145 P3d 245 (2006), *rev den*, 343 Or 33 (2007) (citing *State v. Warren*, 168 Or App 1, 6, 5 P3d 1115, *rev den*, 330 Or 412 (2000)). We state the facts of this case consistently with our standard of review.

---

[1] We reject defendant's unpreserved second, third, and fourth assignments of error without further discussion. We also reject the assignments of error raised by defendant in his supplemental briefs, including the one directed to the trial court's nonunanimous jury verdict instruction. Although instructing the jury that it could return a nonunanimous verdict was erroneous, that error was harmless beyond reasonable doubt because the verdicts were, in fact, unanimous. *State v. Ciraulo*, 367 Or 350, 354, 478 P3d 502 (2020).

The victim, K, was alone in his Tualatin apartment one evening when a woman, Dubrie, knocked on his door and frantically shouted, "I need help." K opened the door, but Dubrie "barely finished the sentence before [K] saw the shotgun come through the door." At that point, "two masked men came in with guns and demanded drugs and money[.]" K fell to his knees and appeared to surrender himself by putting his hands up. While one of the men checked the apartment to make sure that no one else was home, the other kept his gun pointed at K. After they determined that the apartment was otherwise empty, one man held a shotgun and the other searched the master bedroom, telling K that they were looking for "50,000 and coke." The man who held the shotgun told K that he had "just been testing out his shotgun" and it felt "good to shoot." The two men were wearing ski masks, so K was not able to identify which of the men was defendant, and which was his accomplice, Williams.[2]

As the two men searched K's apartment for the $50,000 and cocaine, they found two safes in his closet. They forced K to open them. There was no money or cocaine in the safes. Instead, they found tax documents, two handguns, wedding bands, passports, and Social Security cards. They also found a handgun in K's nightstand and another in his wife's nightstand. At that point, they contacted Dubrie by walkie-talkie to ask for the name of the intended target. She did not know the name. K overheard one suspect ask his accomplice whether he knew the target's name and who lived in the apartment, but he did not know either. They asked K "if Boogie was lying," to which K responded that he had no idea what they were talking about. "Boogie" was Williams's nickname. Defendant and his accomplice decided to leave the apartment. As they left, they forced K out of the bedroom and into the hallway, still at gunpoint, where they filled a duffel bag with K's wallet and other items. They threatened to return if he called the police, and then they left.

K immediately called the police and provided them with the serial numbers of the stolen guns and information

---

[2] The lack of specific identification is not material to this case because, as the jury found, the evidence was sufficient to support defendant's conviction for both burglary and robbery regardless of which masked person had been defendant.

about the other stolen items. The police suspected a failed "drug rip."

Six days later, a Utah law enforcement officer stopped defendant for a window-tint violation. There were four passengers in the car that defendant was driving, including Williams and a man named Belaire. The officer searched defendant's car for evidence of crimes unrelated to the burglary and robbery, uncovering firearms, watches, jewelry, magazine clips, and bullets. The firearms were later determined to be those that had been stolen from K in Oregon. Belaire was found to have a bus pass with an Oregon destination. All of the occupants were arrested.

The Utah search accelerated the Oregon investigation. Between seizing phone records and gaining the cooperation of Belaire, as well as two other men connected to the incident—High and Oller[3]—authorities began to piece together how these men were connected to the home invasion in Oregon. Oller had been angry with another man, Austin, about a failed drug transaction. He had contacted his friends in Kansas—defendant, Belaire, and Williams— and obtained their agreement to assist him in recovering the lost drugs and money from Austin in Oregon.

High and Belaire testified at trial and described the group's plan and its failed execution. On the morning of the robbery, Oller went to Austin's apartment to collect money that he believed Austin owed him, but no one answered the door. The apartment that Oller knocked at was number 60 in the same building as K. Later that evening, defendant, Oller, Belaire, Williams, and Dubrie drove to Austin's apartment building to rob him. Defendant, Williams, and Dubrie exited the car with their guns and ski masks. Several minutes later, Dubrie returned to the car and reported that they had knocked on the wrong door—unit 66, rather than 60. Defendant and Williams, however, remained inside the apartment and robbed K instead. The day after the armed

---

[3] Oller received immunity to testify, but he died prior to trial. High agreed to plead guilty to second-degree robbery in exchange for his testimony and a more lenient sentence recommendation. Belaire was charged with offenses related to the robbery, but he had not yet entered a plea by the time of trial.

robbery, Oller told High that they had "bad information" and that they had "hit the wrong house."

For his role in the incident, the state charged defendant with first-degree robbery with a firearm, ORS 164.415, ORS 161.610 (Count 1); second-degree robbery with a firearm, ORS 164.405, ORS 161.610 (Count 2); and first-degree burglary with a firearm in a dwelling, ORS 164.225, ORS 161.610 (Count 3). In Count 1, the state alleged:

> "[Defendant], on or about March 29, 2017, in Washington County, Oregon, did unlawfully and knowingly, while in the course of committing theft, with the intent of compelling [the victim] to deliver the property and to engage in conduct which might aid in the commission of the theft, and being armed with a deadly weapon, threaten the immediate use of physical force upon [the victim].
>
> "The State further alleges that defendant used a firearm during the commission of the above-described felony."

In Count 3, the state alleged:

> "As part of the same act and transaction as that alleged in Counts 1 and 2, the defendant, on or about March 29, 2017, in Washington County, Oregon, did unlawfully and knowingly enter or remain in a dwelling located at [the victim's address], with the intent to commit the crime of theft therein.
>
> "The State further alleges that the above-described burglary occurred in an occupied dwelling.
>
> "The State further alleges that the defendant threatened to cause physical injury during the commission of the above-described burglary.
>
> "The State further alleges that defendant used a firearm during the commission of the above-described felony."

A jury found defendant guilty of all three counts. At sentencing, the trial court merged the guilty verdicts on Counts 1 and 2 and imposed the mandatory minimum sentence of 90 months' imprisonment for first-degree robbery. ORS 137.700(2)(a)(R). The state argued that defendant's sentence on Count 3 should be run consecutive to defendant's sentence on Count 1. Relying on *State v. Martinez*, 270 Or App 423, 348 P3d 285, *rev den*, 357 Or 640 (2015), it argued

that ORS 137.123(5)(a)[4] authorized the court to run defendant's sentences consecutively because the commission of the burglary was "not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime, but rather of an indication of *** defendant's willingness to commit more than one criminal offense." Defendant responded that the acts resulting in his convictions for both robbery and burglary were "not distinct either temporally or qualitatively." He argued that the burglary and the robbery were essentially the same acts because defendant entered K's apartment by force, threatened him, sought money and drugs, and ended up stealing various other items via threats of force.

The trial court agreed with the state and explained its conclusion that defendant intended to commit separate offenses, because the act of breaking into K's apartment with the intent to commit theft (burglary) was a separate and distinct act from the robbery that he committed while inside. The court sentenced defendant to 30 months' imprisonment on Count 3,[5] and ordered that defendant serve that sentence consecutively to the sentence for first-degree robbery. This appeal followed. As we explain below, we reject defendant's arguments against consecutive sentences, and we affirm.

ORS 137.123(5)(a) authorizes trial courts to impose consecutive sentences for multiple convictions arising from "a continuous and uninterrupted course of conduct," so long as the court finds that "the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather

---

[4] ORS 137.123(5)(a) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense[.]"

[5] Defendant was classified as a 9I on the sentencing grid for that offense.

was an indication of defendant's willingness to commit more than one criminal offense[.]" We have acknowledged that subsection (5)(a) is, "in many ways, amorphous—and perhaps inscrutable." *Anderson*, 208 Or App at 415. That is so because it is often implicated in cases where "culpability for multiple crimes is ultimately predicated on a single, common act" (*e.g.*, breaking into a person's apartment in order to commit robbery). *Id.* at 419. Those cases can be particularly challenging because, as a practical matter, it is not always apparent whether a person's single act evinces "a willingness to commit more than one criminal offense." *Id.* at 420. Such cases require explicit evidence of intent to commit separate crimes:

> "We have held that, when a defendant commits two offenses by the same act undertaken to achieve the same purpose, 'in the absence of explicit evidence of multiple intents,' consecutive sentences are not authorized because the two offenses are 'so inextricably intertwined' that the consecutively sentenced offense is necessarily incidental to the more serious crime."

*State v. Edwards*, 286 Or App 99, 103, 399 P3d 463, *rev den*, 362 Or 175 (2017) (quoting *State v. Byam*, 284 Or App 402, 405, 393 P3d 252 (2017)). The case before us does not, however, involve multiple crimes based on a single act. As we have described, whether two crimes were not merely incidental to each other is an "innately factual" inquiry. *Id.* When a defendant commits the "consecutively sentenced offense" by engaging in "conduct that is temporally or qualitatively distinct from the act constituting the more serious offense, such evidence may support an inference that the commission of one offense was not merely incidental to the other." *Id.*

In deciding whether to impose consecutive sentences under subsection (5)(a), trial courts must carefully evaluate "the *nature* of a defendant's offenses * * * as well as the defendant's *willingness* to commit more than a single offense." *Martinez*, 270 Or App at 429 (emphases added). Determining whether to impose consecutive sentences under subsection (5)(a) is not an exercise in "element-matching" untethered from logic. The court must assess "as a practical, 'real world' matter," whether the "defendant could easily

have committed either crime without committing both." *Anderson*, 208 Or App at 419.

In *Anderson*, for example, the defendant robbed a fabric store by threatening the clerk with a gun if she did not hand him the money in the cash register. *Id.* at 411. After leaving the store, the defendant jumped into a truck and demanded that the owner, Nichols, give him a ride. Nichols dragged the defendant out of the truck and momentarily turned away when the clerk yelled to him, warning that the defendant had a gun. The defendant used that pause to pull a mallet out of his bag and strike Nichols in the head with it. *Id.* He was convicted of first-degree robbery and second-degree assault arising from the carjacking and received consecutive sentences. *Id.* at 413. We affirmed, concluding that the sentencing court could reasonably have inferred that the defendant "had a number of options," and, by choosing to hit Nichols with the mallet, he had chosen to commit assault in addition to the robbery. *Id.* at 422-23.

Similarly, in *State v. Groves*, 221 Or App 371, 373, 190 P3d 390, *rev den*, 345 Or 415 (2008), the defendant broke into the victim's apartment in order to rape her. He was convicted of attempted rape and burglary and was sentenced consecutively on those convictions. *Id.* at 374. In upholding his consecutive sentences, we explained that the trial court could infer from his conduct that he "was willing to commit both burglary and rape" as distinct crimes. *Id.* at 381. Despite the fact that the two convictions stemmed from the same course of conduct—breaking into the victim's apartment in order to rape her—as a practical matter, his actions demonstrated a separate willingness to commit the crime of burglary and the crime of rape. *Id.*

Of course, the mere fact that the same conduct constitutes more than one crime is not sufficient under ORS 137.123(5)(a) to impose consecutive sentences for those crimes. When a defendant acts with a willingness to commit only a single crime that might later be charged as more than one crime, consecutive sentences would not be authorized. For example, in *Warren*, the defendant shot the victim in the head (with the intent to kill him) and was convicted of both assault and attempted murder. 168 Or App at 3-4. We

held that the trial court had erred by imposing consecutive sentences. *Id.* at 6. The single act of shooting the victim in the head manifested the intent to kill *and*, *if that failed*, to seriously injure the victim. *Id.* But the crimes were not "temporally or qualitatively distinct" and did not otherwise reflect a "willingness" to commit either crime without committing both. *Id.*

In determining whether to run the sentence on a less serious crime consecutive to the sentence on a more serious crime under ORS 137.123(5)(a), it is important to consider whether the defendant could have committed the more serious crime without also committing the less serious crime. In *Byam*, we concluded that the court was not authorized to run an unauthorized use of a vehicle (UUV) sentence consecutive to a robbery sentence, because "the same act (obtaining the victim's keys through the use of a dangerous weapon), undertaken to achieve the same end (the exercise of control over the victim's car), concurrently violated both criminal statutes." 284 Or App at 405. The defendant could not, under those circumstances, have committed robbery without also committing the UUV. In contrast, we affirmed the imposition of a consecutive sentence for criminal mischief committed during a burglary in *Traylor*, 267 Or App at 617. We concluded that the "fact that defendant was more destructive of property than he needed to be in the manner in which he conducted the burglary, in turn, permits the inference that defendant was willing to commit the separate offense of criminal mischief in addition to the offense of burglary." *Id.* at 616.

Returning to the facts of this case, defendant argues that the burglary—which the parties agree is the lesser of the two crimes for the purposes of ORS 137.123(5)(a)—was merely incidental to the robbery. We disagree. Mindful of the deferential nature of our review, we conclude that the evidence supports an inference that the burglary and the robbery that defendant carried out were qualitatively distinct and not merely incidental to each other, that defendant was willing to commit both crimes, and that the trial court did not err in imposing the burglary sentence consecutive to the robbery sentence.

Here, evidence in the record shows that defendant planned a very particular burglary and robbery—one with a specific victim in mind, with the specific motive of payback. After defendant committed burglary, and while he was still under the impression that he was in Austin's apartment with Austin, Dubrie interrupted defendant and his accomplice on the walkie-talkie to discuss who the intended target of the robbery was supposed to be. There were questions put to K about "Boogie" and "who's supposed to be living" in the apartment. The evidence shows that defendant knew or suspected that he was in the wrong apartment. The planned robbery now impossible, defendant and his accomplice shifted from looking for money and cocaine in Austin's possession to a decision to rob K of his property instead.

The imposition of consecutive sentences in this case was lawful because the evidence established defendant's intent to commit two separate and distinct crimes. He committed the crime of burglary with a firearm when he entered the apartment with a shotgun aimed at the occupant, with the intent to commit robbery. The evidence in this record shows that defendant, realizing that his planned robbery was not possible, formed an intent and a willingness to commit an entirely different robbery by compelling K, at gunpoint, to surrender K's possessions to him. In other words, defendant switched gears once his original plan was foiled, and he decided to commit an entirely different robbery than the one he had envisioned he would commit when he entered the apartment.

This case is like *Groves*, where, despite the fact that the burglary was necessary as a practical matter to commit rape, the evidence demonstrated the defendant's intent—or willingness—to commit the crime of burglary and the crime of rape. Consecutive sentences were thus authorized by ORS 137.123(5)(a). 221 Or App at 381. This case is also like *Martinez*, where we concluded that partially consecutive sentences were authorized under ORS 137.123(5)(a) because the evidence established that the robbery was not merely incidental to the attempted aggravated murder. 270 Or App at 428. There, the defendant committed robbery before he attempted to kill the victim. Because the acts that constituted each crime were "distinct both temporally and

qualitatively," the court "could properly find" that the robbery "was not merely incidental" to the attempted murder. *Id.* The evidence, we said, showed that the defendant "willingly engaged" in separate criminal acts. *Id.* at 430. Here, defendant committed burglary before he committed robbery. The evidence readily supports the conclusion that he was willing, and intended, to commit robbery thereafter—a different robbery than the one he had planned to commit when he first entered the apartment.

This case is different than *Warren*, where the defendant shot the gun once intending to commit murder, but failed to do so, and we concluded that the evidence did not support consecutive sentences. 168 Or App at 6. This case is also different than *Edwards*, where we concluded that consecutive sentences were not authorized when the defendant shot his gun twice, missing the officer with the first shot and hitting him with the second. 286 Or App at 103. We concluded that resolution of the question of whether there was any evidence to support a determination that the assault conviction was not merely incidental to the attempted aggravated murder conviction required evaluating the "relationship between the uncontroverted * * * facts" and "the predicate criminal statutes." *Id.* Whether the defendant "evinced the requisite" intent to commit more than one crime is, we said, "innately factual." *Id.* This case is also different than *Byam*, which involved one act (obtaining the victim's key) with one purpose (taking control of the victim's car). 284 Or App at 405. We held that, under those circumstances, the court was not authorized to run the UUV sentence consecutive to the robbery sentence because the evidence did not support a finding that the UUV was anything but incidental to the robbery. But that is not what happened here.

The trial court did not err when it ordered defendant to serve his sentence on Count 3 consecutive to the sentence on Count 1.

Affirmed.